177 Cal.App.4th 645 (2009)
In re L.M., a Person Coming Under the Juvenile Court Law.
THE PEOPLE, Plaintiff and Respondent,
v.
L.M., Defendant and Appellant;
CONTRA COSTA COUNTY PROBATION DEPARTMENT, Objector and Respondent.
No. A124299.
Court of Appeals of California, First District, Division Five.
September 9, 2009.
*647 Francia M. Welker, under appointment by the Court of Appeal, for Defendant and Appellant.
No appearance for Plaintiff and Respondent.
*648 Silvano B. Marchesi, County Counsel, and Esther Milbury, Deputy County Counsel, for Objector and Respondent.

OPINION
NEEDHAM, J. 
Appellant L.M. was declared a ward of the juvenile court under Welfare and Institutions Code section 602[1] and was placed in a Southern California residential treatment program several hundred miles away from his home. The goal of his case plan was reunification with his father and monthly visits were ordered as part of the plan. Appellant filed a motion to require the Contra Costa County Probation Department (Department) to pay his father's transportation costs to and from the monthly visits. The motion was denied and this appeal follows.
(1) We agree with appellant that a juvenile court hearing a delinquency case has the power, under the appropriate circumstances, to order a supervising agency to financially assist a parent who lacks the financial means to travel to and from visitation. We affirm the juvenile court's order denying the motion for travel expenses in this case because appellant failed to make a threshold showing that his father was unable to afford the cost of the trips to and from visitation.

I. BACKGROUND

In May 2007, when he was 12 years old, appellant touched the vagina of his three-year-old stepsister. He had himself been repeatedly molested by his older brothers and sisters when he lived with his mother in Michigan before moving to his father's home in Contra Costa County in 2004. Upon discovering that appellant had molested his stepsister, his father contacted the police. Father had already put appellant in counseling for his sexual abuse issues and did not know what else to do.
The district attorney filed a juvenile wardship petition alleging that appellant had committed a lewd act upon a child under 14. (Pen. Code, § 288, subd. (a).) On May 29, 2007, the petition was amended and appellant admitted one count of sexual battery in exchange for the dismissal of the lewd conduct charge. (Pen. Code, § 243.4.)
In its report prepared for the disposition hearing held on June 11, 2007, the Department recommended a highly structured residential treatment program, *649 noting that appellant suffered from a number of behavioral problems stemming from sexual abuse and attention deficit hyperactivity disorder. The court ordered appellant removed from his father's custody and placed under the Department's supervision in the Gateway Residential Program for a maximum period of four years. The case plan for the minor contemplated family reunification with his father, and the court ordered visitation as a component of the plan. (See § 727.2, subd. (a) [reunification services in wardship case].) Father's responsibilities under the plan required him to "assist in financial obligations" and "assist with transportation."
Appellant's placement in the Gateway program was continued at the six-month review hearing held in November 2007. (See § 727.2, subd. (c).) Monthly visitation with father continued, and family reunification with father remained the goal of the plan.
In its report prepared for the permanency planning hearing set for May 14, 2008 (see § 727.3, subd. (a)(1)), the Department advised the court that appellant was no longer progressing in his treatment at Gateway and recommended that he be moved to the Children's Therapeutic Community (CTC) in Riverside, California, several hundred miles away from father's home. The court adopted the recommendation after finding there were no local alternatives that would provide the sex offender counseling that appellant needed. The permanent plan was identified as "return home" and monthly visits with father were continued.[2] Appellant was moved to CTC on May 21, 2008.
A status review hearing was held on November 20, 2008. Placement at CTC continued, the permanent plan remained "return home," and monthly visitation was to continue between appellant and his father. Father remained obligated under the case plan to "assist in financial obligations" and "assist with transportation." The court found that father's progress under the plan had been poor.
On January 9, 2009, appellant filed a "Motion In Support of Family Financial Assistance With Travel to Child Visitation," which sought an order requiring the Department to pay for father's travel costs to and from the monthly visits in Riverside County. The Department filed written opposition to the motion, arguing that the case plan approved by the court did not *650 require it to pay for travel costs and in any event, there was no statutory authority on which such an order could be based.[3] The court denied the motion for the reasons stated in the opposition papers.

II. DISCUSSION

Appellant's case plan included monthly visits with his father at CTC in Riverside County, and he raises no challenge to either the frequency of the visitation ordered or the suitability of his placement. His only argument in this appeal is that the court should have granted his motion for an order requiring the Department to pay for his father's travel costs to and from the visits.
(2) "Although dependency law and delinquency law are clearly not identical, the Legislature has expressly set forth the purposes of the juvenile court law with regard to both dependency and delinquency in a single section, in which it recognizes the importance of the preservation and strengthening of family relationships for both dependent and delinquent minors." (In re James R. (2007) 153 Cal.App.4th 413, 430 [62 Cal.Rptr.3d 824], fn. omitted (James R.).) (3) Section 202, subdivision (b) refers to "family preservation and family reunification" as "appropriate goals" in the delinquency context where consistent with the best interests of the delinquent minor and the public.
(4) Consequently, when a minor is removed from his parents' custody after being declared a ward under section 602, "the juvenile court shall order the probation department to ensure the provision of reunification services to facilitate the safe return of the minor to his or her home or the permanent placement of the minor, and to address the needs of the minor while in foster care ...." (§ 727.2, subd. (a); see also Cal. Rules of Court, rule 5.790(e).) Adequate visitation with a parent is "`a necessary and integral component'" of reunification. (James R., supra, 153 Cal.App.4th at p. 435.) If a parent lacks the ability to pay the transportation costs necessary to visit a child placed under probation department supervision outside the home, reasonable efforts to reunify the family may include financial assistance with respect to a parent's travel costs. As we explain, we conclude that a juvenile court may, in an appropriate case, order the probation department to financially assist a parent's travel to and from visitation when necessary to promote the goal of returning the minor to parental custody. (See §§ 202, subd. (a), 727.2, subd. (a).)
*651 (5) This is not to say that parents of delinquent childreneven those of limited financial meansare entitled to transportation costs during the reunification period as a matter of constitutional right. Though a minor has a constitutionally based right to visitation with family members while placed outside the home (James R., supra, 153 Cal.App.4th at p. 417), this does not translate into a corresponding constitutional right to have the travel to and from those visits funded by the state. (See In re Cleopatra D. (1987) 193 Cal.App.3d 694, 697-698 [238 Cal.Rptr. 426] [mother living out of state was not constitutionally entitled to airfare to attend hearing on petition to terminate parental rights].) However, the statutory scheme concerning delinquent minors broadly grants the juvenile court the power to make "any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support of the minor, including medical treatment, subject to further order of the court." (§ 727, subd. (a).) We construe this broad statutory power to include the ability to order the payment of travel costs for a parent, so long as "appropriated funds are reasonably available." (In re Samuel G. (2009) 174 Cal.App.4th 502, 512-513 [94 Cal.Rptr.3d 237] (Samuel G.) [upholding court order directing county health and human services agency to pay travel costs of dependent child's educational representative].)
(6) The Department suggests that payment of a parent's travel expenses would conflict with the obligations imposed on father as part of his case plan and with section 903, which requires parents to pay for the ordinary costs of supporting their delinquent children while they are placed in state custody. We disagree. Section 903 concerns a parent's liability for costs actually incurred by the government to support a child placed outside the home and does not on its face appear to apply to travel expenses for visitation. In any event, a parent's duty to support a child under that section is subject to the parent's ability to pay. (§ 903, subd. (c).)
(7) Having concluded that a juvenile court may order an agency to assist a parent of a delinquent child with travel costs for visitation, we next consider the circumstances in which a juvenile court should make such an order. While we do not attempt to anticipate all the factors that may be relevant to this determination, a nonexhaustive list would include the parent's financial circumstances and ability to pay the necessary travel costs (considering the parent's income, assets, expenses, and other support obligations); the methods of transportation available and their respective costs; the nature and stage of the minor's case plan and whether family reunification is contemplated; the parent's conduct and participation in other aspects of any reunification plan ordered; the frequency of visits ordered and the degree to which the minor is likely to benefit from face-to-face visits; and the availability and adequacy of other forms of parent-child contact (such as telephone calls, letters and e-mail). Then, assuming these and/or other factors support a request for financial assistance with a parent's travel expenses, a court may only require *652 the agency to pay the expenses if funds have been appropriated that may be used for this purpose. (See Mandel v. Myers (1981) 29 Cal.3d 531, 539-540 [174 Cal.Rptr. 841, 629 P.2d 935] [separation of powers doctrine forbids court from ordering legislative branch to enact a specific appropriation, but once funds have been appropriated, court may order that expenditures be made from those funds]; Samuel G., supra, 174 Cal.App.4th at p. 513 [same].)
While it does not appear the trial court in this case considered such factors, it properly denied appellant's motion for travel costs based on the record before it. Appellant's counsel informed the court at the hearing that father did not have the money for transportation because he was currently unemployed, but the motion was unaccompanied by any declaration or other competent evidence providing details about father's financial circumstances or the likely cost of his travel. Counsel also represented that she was "not sure the father would actually follow through and utilize his opportunity to visit because he has not been really good in [sic] staying in touch with us or with probation. It takes a lot of phone calls to reach him." Absent some evidentiary showing that father could not afford a monthly trip to Riverside County, or that he was actually seeking the money requested, the court would have abused its discretion in ordering the Department to fund the travel to and from the visits. Even if we assume the trial court erroneously assumed it lacked the statutory authority to order the expenses requested, its denial of the motion was correct and must be affirmed on appeal. (See In re Zamer G. (2007) 153 Cal.App.4th 1253, 1271 [63 Cal.Rptr.3d 769].)
Nothing in our decision today precludes appellant or his father from bringing a new motion seeking the payment of travel costs based on additional information. Although the 18-month period for reunification services has ended and visitation is no longer an aspect of reunification services per se (§§ 727.3, subd. (b)(2), 727.2, subd. (g)), the court has the obligation to specify "the nature and frequency of visiting arrangements with the parents" when selecting a permanent plan (§ 727.3, subd. (a)(3)) and may still consider the payment of travel expenses under its broad power to make orders for the minor's care and maintenance (§ 727, subd. (a)).[4]

*653 III. DISPOSITION

The judgment (order denying motion for financial assistance/travel costs) is affirmed.
Jones, P. J., and Simons, J., concurred.
NOTES
[1] Further statutory references are to the Welfare and Institutions Code unless otherwise specified.
[2] When a delinquent minor has been placed in foster care, the court must hold a permanency planning hearing within 12 months and must select one of several possible permanent plans, in descending order of preference: (1) return to parent; (2) six months of additional reunification services with the goal of return to parent; (3) adoption; (4) guardianship; (5) relative placement; or (6) placement in a planned permanent living arrangement with a goal of return home, emancipation, guardianship or permanent placement with a relative. (§ 727.3, subds. (a), (b).)
[3] The Department has been represented by county counsel both in the trial court and on appeal. The district attorney took no position on the issue of father's transportation costs and the Attorney General has likewise declined to do so in this appeal.
[4] Section 727.3, subdivision (b)(2) provides, "The court shall not continue the case for further reunification services if it has been 18 months or more since the date the minor was originally taken from the physical custody of his or her parent or legal guardian." Section 727.2, subdivision (g) provides that at all status review hearings subsequent to the original permanency planning hearing, "the court shall not order a permanent plan of `return to the physical custody of the parent or legal guardian after further reunification services are offered....'...." At the postpermanency planning hearing in this case, the court identified the permanent plan as "return home" notwithstanding the expiration of the 18-month period. While the propriety of this order is not before us, the family's inability to reunify within the 18-month period is a circumstance the court may consider in ruling on any future request for travel expenses. (See Los Angeles County Dept. of Children etc. Services v. Superior Court (1997) 60 Cal.App.4th 1088, 1093 [70 Cal.Rptr.2d 658] [father living in California was not entitled to airfare for visitation with child placed in Georgia after court reversed order improperly extending reunification services beyond the 18-month reunification period in a dependency case].)